Nott, J.
The land had been granted to one Allison, who died b . . without heirs. The plaintiff produced no title, but relied on their possessory right. It appears that their ancestor had been about ten or eleven years in possession, and then died intostate, leaving them in possession. After two or three years, they moved off, and the defendant came into possession. It is contended on the part of the defendant, that the plaintiffs could not gain a right by possession, because it requires five 'years adverse possession to give a right. That, although the plaintiffs were more than five years in possession, it does not appear that they held adversely to the defendant. But I take it that where a person is in possession, he holds adversely to all the world, except those who shew that it is concurrent with their title. Lapse of time will never bar one out of possession, except.where there is one holding adversely. But when a person is in actual possession, the more quiet that possession is, the stronger is the presumption of title. It is also further contended that the act of 1787, regulating escheats, &c., exempts escheated lands from the operation of the statute of limitations. But that act has only a retrospective operation, and exempts only such lands as had escheated before that time.
But the defendant has a better claim than- arises from either of these grounds. On the death of old Allison, the land vested in the State, by operation of law ; and although this right may be unavailable, until an inquest of office, yet no individual can acquire a right to it by possession, unless the act of limitation runs against the State ; and I am of opinion it does not. The nullum tempus principle, as it has been called, is not derived from feudal or royal principles, as has been supposed. It has much stronger reasons for its support; reasons peculiarly applicable to a republican form of government. The State cannot be disseized. The ubiquity of the sovereign power, particularly when the sovereignty is in the people, protects it from any such principle. The citizen cannot' be presumed to hold adversely to the State, except when the State has parted with its rights. See Hill and M’Clure, Const. Rep. I admit that such alienation may be presumed from lapse of time and other circumstances ; but there is no room for such a presumption in this case ; besides, none of the limitation acts appear either expressly, or by implication, to relate to the State, but always speak of persons in their individual capacities. The present plaintiffs, therefore, having acquired no right, must be considered as having abandoned the possession to the first occupant. With regard to the hardship of the case, the defendant had, the same right, when the *256 p0ssess¡0n became vacant, to enter and enjoy it, as the plaintiffs had';. and having got the possession, ought not to have been disturbed. It is incorrect to say, that where the equity is equal, the verdict ought to stiuK* ’ ^or> w5ere the equity is equal, the defendant ought to be protected in his possession. It is an old and correct maxim, that possession is good against all the world, except him who. has the right. I am of opinion, therefore, that the verdict ought to be set aside, and a nonsuit granted.
But it is made a question whether the land can be considered as belonging to the State, until office found. On this point, 1 have no doubt, a case directly in point, is decided in I Plowden, 223, Willion v. Berkly and Knight. It is said by the whole court, that the freehold was presently cast upon the king ; and that an office was not necessary. Do. 230. 4 Co. Rep. 58. A difference is made between lands which escheat for want of an heir, and those which escheat by reason of a forfeiture. In the first case, they go to the king immediately. In the last, they do not until office found. Lands cannot be in abeyance, and therefore when there is no heir, they must be in the State. But when they escheat by reason of forfeiture, they remain in the former owner until office found, or until his death, and even in that case,-at his death, they go to the king, in England, for-want of heirs, for the heirs cannot inherit, by reason of the corruption of blood of the ancestor. The lands, therefore, go to the king, for want of heirs, until office found ; and then they are vested in him by the inquest. 2 Plowden, 486. So that in any point of view, the plaintiffs in this case- cannot recover* But admitting that the State does not even acquire an inchoate right, still the plaintiffs cannot recover, for they have none ; and a plaintiff must always recover on the strength of his own title.
Brevard, J.
This was an action to try the titles to land, in which a verdict was obtained for the plaintiffs, and the motion is for a new trial.
The land in question, was originally granted to one Allison, a-German, who died intestate, prior to the American revolution, leaving no descendant or other person, who is known, entitled to succeed to his estate. Some time before his death, he intermarried with the widow of one Harlock, but there was no issue of that mar-rage. By her former marriage with Harlock, she had issue, Vincent Harlock, the husband of the plaintiff, Mary Harlock, and father of the other plaintiffs. After Allison’s death, his widow had possession of the land, and continued to reside thereon till, her death. After her death, Vincent Harlock, was in possession eleven *257 Or twelve years, when he died, and .the' plaintiffs continued in possession, until about three years before the trial of this case. The defendant afterwards entered, and keeps possession. At the trial, the plaintiffs produced in evidence, the original grant to Allison, and relied on the possession which has been stated, as sufficient to entitle them to* recover and possess the land under the act of limitations.
On the part of the defendant, several old witnesses were examined, who testified that Allison Was a foreigner by birth, and had no relations known in this country ; and it was contended that the land escheated upon his death.
This is all Í have been able to collect concerning this case, from the report of the judge before whom the case was tried, and the brief with which I have been served.
- The counsel for the plaintiffs, in the argument on this motion, contended chiefly for the equity of the plaintiff’s claim, and seemed to acquiesce in the assertion of the defendant’s counsel, that the plaintiffs had, in strictness no legal right to recover. But this court cannot decide in favor of the equity of the case, in contradiction to the law of the case; equity must follow the law.
The plaintiffs, it seems, rested their right of action on the pos. session of Vincent Harlock, and pretended that he held an adverse possession, claiming as heir at law of Allison ; or else the plaintiffs rel.ied on the long possession of Allison’s widow and her son, who died in quiet possession, leaving them in possession, as strong presumptive evidence of a title from Allison;
From the evidence stated by the judge, and the statement of facts in the brief, which I believe was not objected to, it does not appear to me that there was evidence given in the case, sufficient to raise a presumption that Allison had divested himself of the title, by any kind of transfer during his life; and the evidence that Harlock claimed, as heir at law of Allison, and had such an adverse possession, as is sufficient, by the operation of the limitation act, to give him a title, seems to me so slight and doubtful, that I thitik it ought to have had little weight; even if the possession under such circumstances could be improved into a title; But I am of opinion that no such claim can be improved into a title. If adverse possession must be accompanied by a lawful claim, or one apparently legal, as I think it ought, then the adverse possession of Harlock, admitting he claimed adversely, which I can hardly believe, could have no effect; for it was manifestly a claim, destitute of any legal foundation, or color of right. How could he claim as Jieir.at law of a man who Was an alien, and an utter stranger to his blood. But, overlooking *258 every objection on this ground, it is clear to me that the act of limí¿ tations cannot operate to bar an escheat; nor can it operate to give1 aright of action to escheated property, against any one who may be in possession, no matter by what means the possession has been , acquired.
It seems clear in my view of the case, that the land in question is to be regarded as an escheat from the time of Allison’s death. By the law of England, if a man dies without heirs, his land vests immediately in the king; because the freehold cannot be in abeyance, and there is no one else capable of taking the freehold. It is said to be otherwise, where a man dies, leaving issue, but such issue as has no inheritable blood ; as where his blood has been corrupted by attainder; in that case, the land does not vest in the king, without office found ; because the freehold may vest in the heir till office found, and is not in abeyance. Yet in the case of an alien, who purchases land and dies, it is said the freehold is in the king, without office found; because no man can take as heir to the alien. But an alien may himself hold by purchase till office found. See 1 Bac. Abr. 81. Co. Litt. E. Dy. 283. 5 Ray. 52. b. Terms deley, verbo alien. Hard. 495. 3 Inst. 254. 2 B[. Com. 294. Plow. 229. 242. Co. Litt. 83. b. 2 Hawk. P. C. C. 29.
The doctrine on this subject, originated in feudal principles ; but I do not know that it has ever been exploded, by any decision of our courts, as inapplicable, or productive of mischief or inconvenience j and I am by no means prepared to say that it ought to be. In the case under consideration, I am of opinion, that the doctrine well applies ; that the fee simple of the land vested instantaneously on the death of Allison, in the public, and that no one was entitled to take possession of the land in question, or keep possession of it, any more than of vacant land. It was decided in the case of Bodden v. Speigner, in this court, in May, 1809, that a title to escheat-ed lands cannot be acquired by a grant of it as vacant land ; but that an office must be found, and the land sold according to the mode prescribed, by an act concerning escheats. In England there are two.sorts of offices. One vests the estate and possession of land in the king, where he had only a right or title before ; this is called the office of entitling. The other is called the office of instruction, to ascertain the particularity of land which has already vested in the king, by operation of law. 5 Rep. 52. 16 Vin. Abr. 79.
There is no necessity, I conceive, with us, for distinguishing the proceedings under our escheat law, by any reference to these two *259 sorts of offices in England ; but, in all cases where property es-«heats to the public for want of heirs, or other causes, as where it may be claimed in the possession of an alien purchaser, in order to authorise the use of it to public purposes ; or the disposal of it by the public authority, there must be an office found; that is to say, there must be proceedings to establish the escheat, pursuant to the act of assembly concerning escheats. Till that is done, lands es-cheated, ought, I apprehend, to be regarded as public property, unappropriated, to which no one can rightfully claim exclusive property .or possession. Any one in peaceful possession of escheated land, may, however, vindicate his possession against a wrong doer, or trespasser, and recover damages for any disturbance of his possession ; but he can acquire no title, or right of possession against the public. He is only joint tenant, with all the other members of the society. In the case before the court, the plaintiff claims property in the land in question, and it lias been proved that it vested in the Slate as an escheat. The title of the defendant is out of the question ; the plaintiff must recover on the strength of his own title. No person is claiming by a grant from the State, or by any title from the State, under the escheat law, or "otherwise. If that were the case, the claim would be rejected without shewing a legal title, pursuant to the escheat law. But the defendant without relying on any title, insists that the plaintiff has not a good title; and that although he himself 'may not be entitled to the possession of the land, yet the plaintiff has no right to recover the possession from him. To support this ground of defence, he has shown that the person last lawfully seized, died without heirs ; and the evidence to prove this, has not been sufficiently rebutted, by any evidence produced in the case. The consequence is, that the title appears to be out of the plaintiff; and, therefore, my opinion is, that he is not entitled to the verdict he has obtained. 1 am, therefore, for grant, ing a new trial.
The court unanimously granted the motion.